We'll hear argument first this morning in Case 2014-10, Ruan v. United States and the Consolidated Case. Mr. Robbins? Thank you, Mr. Chief Justice, and may it please the Court, Dr. Xu Lu Ren's jury was instructed that it could convict him of federal narcotics offenses if he prescribed, quote, outside of the usual course of professional medical practice. The Eleventh Circuit sustained that instruction precisely because it, quote, told the jury that good faith was a defense as long as the appellant's conduct also was in accordance with the standards of medical practice. In other words, good faith is a defense in the Eleventh Circuit only for doctors whose prescriptions are already lawful. No lawyer will stand up before the Court this morning and defend either that instruction or the Court of Appeals rationale. And small wonder, Dr. Ren received little more than the instruction he would have gotten had this been a civil malpractice action in Alabama. So in our view, Dr. Ren's case must be remanded. And on remand, the Eleventh Circuit should either dismiss this prosecution outright for want of sufficient proof of Alabama substantive standards or, at a minimum, order a new trial on all counts, this time governed by the correct scienter rule. And that rule, we submit, which largely tracks the law in the First, Seventh, and Ninth Circuits, is that a doctor may not be convicted under Section 841A1 unless the government proves that her prescriptions were made without a good faith medical purpose. The good faith medical purpose test makes the best sense of the statutory text. This Court's case law, it also accords with the principles of federalism that are embedded in the statute itself, enables the jury to focus on the question of intent, as it always does in criminal cases, and affords an appropriate berth for doctors and patients to make the best choices for the individual care of what is often invisible and yet real and intractable pain. I'd be pleased to hear the Court's questions at this time. Thank you. Just a couple of sort of housekeeping questions. Could you explain to me exactly what the offense is here that the government is prosecuting? The principal offense, Justice Thomas, is 21 U.S.C. 841A1, which is the principal narcotics distribution statute, and certain associated statutes that use the drug offense as part of the compound proof. So there's a racketeering charge, there's a money laundering charge. Okay, so let's just stick with the first one. But there's nothing in there, there's an exception, right, to 841? Yes, the accept as authorized exception, correct. So does the government have, when the government indicts, does it have to plead the exception? No. I think under Section 885, it is not required to plead it. That is to say, the statute provides, Your Honor, that there is an obligation of the defense to put the question at issue. But once the defense does so, the circuits are unanimous, and I think correctly so, that it then falls to the government to prove the absence of good faith beyond a reasonable doubt, according to whatever the legal standard for good faith is. So where does that come from, the legal standard that you're talking about, in order to be exempt from 841? The legal standard, as I understand it, Your Honor, comes from the fact that the statute has an embedded exception for physicians. I understand that part, I'm sorry. Does it come from a statute or a regulation? The obligation to prove good faith? No, the standards for the exception. In order to be registered, to not be covered, because 841 is a broad statute, right? 841 is a narcotics felony statute. So it covers everybody. So if you just looked at that, a doctor would be covered. Yes, so we don't dispute that a doctor... Now, but where does the standard, in order to comply with the exception, the authorization to write prescriptions, where does that standard come from? The standard comes from, I suggest, Justice Thomas, the presumption of scienter, and the principle articulated in several of this Court's cases, we cite, that says in substance that a scienter standard, which is presumed, and of course in this statute actually is expressed, knowingly or intentionally... I thought there were standards that were set out by regulation on how a doctor was to conduct his or her affairs in writing these prescriptions. Well, the Controlled Substances Act largely leaves that to states and administrative boards. There aren't lots of explicit obligations built into the statute itself. On the other hand, the argument we are making today takes the knowingly and intentionally language in the statute and asks, to what elements does that apply? We contend that it applies to the accept as authorized language in the statute, and so you begin with the presumption, you have the statute saying knowingly and intentionally, so you don't have to even read that in, as this Court has done in other cases, and then the only question is, where does it apply? And the only element, Justice Thomas, the only element that could possibly separate innocent from wrongful conduct is the accept as authorized language. Nothing else can possibly make sense. The accept as authorized. Go ahead. What if you're driving along the highway, you're pulled over for speeding, and the officer tells you, look, it was 55 miles an hour, you get a ticket, and you say, oh no, I thought it was 70 miles per hour. You still get the ticket, right? Of course. What if you say, you're pulled over, the officer says, you know, you're speeding, it's 55, and you say, you know, this is in the middle of Montana, I think it should be 70, and I was going under 70. You'd still get a ticket, right? Yes, you would. Well, how is that different if instead of speed limit, we're talking about what is understood, accepted to be in the course of medical practice, and whatever the other thing was, in the course of professional treatment or normal medical practice? You don't get, in other words, you don't get to say, okay, I realize the standard is, whatever, this many prescriptions a month or a year, but I think it should be this. You don't get an instruction on that, do you? Well, it depends. The answer is, no, you don't get an instruction that says, you can pick the rules you like. No. But the instruction that we are urging, which we think, by the way, follows from this court's scienter case law, doesn't create, I suggest, Mr. Chief Justice, it does not create some rule. What it does is it tells the jury, focus on intent, focus on purpose. You are free, as a member of the jury, to disbelieve the doctor's profession of a good faith medical purpose. Well, I thought you told me that he doesn't get to say, well, maybe he didn't, but in the speeding example, he didn't work when he said, I thought it was 70 miles an hour when it was 55, and believed in good faith. This is Montana. You can't see anything for 100 miles. Yeah. Well, let me just say, I don't want to bury the lead. The fact is, speeding is the classic case of a regulatory offense, the sort of situation in which scienter isn't even an issue. You don't get to defend a traffic violation based on your state of mind. But when you're talking about sending doctors, or anybody for that matter, to jail for mandatory minimums of decades in prison, this is not a regulatory offense. This is an offense as to which this court's case law on scienter applies with the most robust force it could. And so I don't, I mean, I take... Can we separate out two issues? Good faith, which goes to the extent of the knowledge, and the actual conduct that the government must prove. Now, I understood, as I read this, that A41A says the government must prove beyond a reasonable doubt that a doctor intentionally prescribed or distributed controlled substances, and you're saying doctors can do that, so the only way they can't do it is if they prescribe it other than for a legitimate medical purpose, and not in the usual course of professional practice, correct? Well, no, well, I... No, you want to say something more, but I think that's what the statute says. The statute, by its words, says, putting in the exception, the government has to prove that he didn't do it for a medical purpose, and in the normal course of business. I think that's the very least they have to prove. That's the least. Now the question becomes, who has the burden of proving, or not, good faith, correct? You say it's the government. They say it's the government, too. I mean, nobody... Not good faith. Oh, no, no, I'm sorry, Your Honor. Nobody is going to tell you this morning that that burden somehow belongs to the defense. Everybody will concede. If you ask my friend, Mr. Fagan, he will tell you that once the issue is put in play under 885, it then falls to the government to prove beyond a reasonable doubt. But I'd like to go... The absence of good faith, but I'd like to go back to where Your Honor began her question. Because you said the words, knowingly and intentionally, must prescribe outside the bounds of medicine and without a medical purpose. It is important for me to be clear that my client didn't get that instruction. His jury was told, if he was outside the bounds of medicine, you may convict him. Full stop. No good faith, no knowingly or intentionally, none of that. So I want to be clear that the premise of Your Honor's question is a premise under which our conviction should be reversed. I see that my red light has flashed, and I am embarrassed to say I don't know if I'm supposed to... You can stand there, and we're going to each see if we have questions for you.  Thank you, Your Honor. Justice Breyer? I do have a number of questions, Mr. Robbins. We are interpreting a statute, so we should start by looking at what the statute says. And it says, except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to do a variety of things. As a matter of language, do the adverbs knowingly or intentionally modify the introductory clause except as authorized by this subchapter? The answer is yes, Justice Alito, and I'd be happy to explain why I think so. Well, I think my old English teacher would say no. You've gotten that answer wrong. There's no way they can modify except as authorized by this subchapter. They modify what comes later. But you explain to me why they modify it. As a matter of language, not as a matter of constitutional avoidance or something like that. No, and I'm not arguing constitutional avoidance. I am arguing the principles that this Court has articulated in Rahaf and other cases. But let's just talk about language. Obviously, I hate to use the word holistic, but it's a holistic endeavor. The government says it only modifies the verbs that come next. That proposition, you've already rejected. Well, we rejected it in a particular case for particular reasons, but I want to forget about all that. I just want to start out with English grammar. Okay. Well, I'm not sure grammar alone will do the trick. Okay, so we'll move beyond grammar. So you want to say that whether or not knowingly and intentionally modify except as authorized by this subchapter, that is an element of the offense. Yes. And therefore, and there's a presumption of scienter as to every element of an offense. No, I wouldn't say that. I thought that was your argument. No, no. Well, there's a presumption as to any element that separates wrongful from innocent conduct. I would not, for example, quarrel with the holding in Urimian that a jurisdictional. Okay. So it's non-jurisdictional. As to a non-jurisdictional element, there is a presumption of scienter. Yes. All right. Why is there a presumption that the scienter here is knowingly or intentionally as opposed to, say, recklessly? Because it's in the statute. But if linguistically they do not modify that clause, then why would you jump over recklessness to knowingly and intentionally? Well, again, I don't mean to be disputatious, but I don't accept the proposition that they don't, as it just, as grammar is best understood, I think they do modify the predicate language. And let me give you, make a slightly different point, Justice Alito. Twenty years or actually twenty, you know, roughly 25 years after 841A1 was enacted, Justice Alito, Congress enacted 841H, which is the subsection that deals with internet sales of narcotics. There you will see that they took the phrase, except as authorized, and they moved it later, which is something they could have done in 1968 when they passed the organic statute to begin with. I don't think it would have made a dime's worth of difference to the meaning. But if you believe that, as a matter of grammar, the knowingly and intentionally can only move forward and not backwards, if it can only radiate later and not earlier, if you believe that, then you'd have to say that there's a material difference between placing it later and placing it first. Well, there is a material difference between placing it later and placing it first, but the problem is not just the sequence. The problem is what an adverb can modify, can only modify a verb, and except as authorized is not a verb. Anyway, beyond that, what about 885? It shall not be necessary for the United States to negative any exemption or exception set for, not only in a pleading, but also in any trial. That's in a pleading, well, that's right. In a trial. Yes, but that provision has been read to mean that the burden of coming forward, as we used to say in evidence class, the burden of coming forward falls to the defense, to put the defense at issue. Well, it has been read that way. Is that the proper reading? I think it is the proper reading. Well, why is it the proper reading? The government doesn't have to negative this in a trial. Well, at the risk of recurring to statutory history, I should point out that under the Harrison Act, the cognate of that provision said that the burden of proof was on the defense. When CSA was enacted many years later, that formulation in 885, I think, makes quite clear that it's just a burden of coming forward. And that's all there is. We don't dispute it. We came forward with this defense, and then the instruction took it off the table. It said to the jury, if you find that this doctor deviated from the usual course of medical practice, you can convict him. Full stop. All right. You say that, I don't want to belabor the point. You say that what this means is that the defense has to produce a prima facie case, right? Well, the way I would put it is- Has to satisfy a burden of production. Correct. And then somebody has to prove something. And when this provision says that the government doesn't have to negative it, that means that actually the government has to prove it, and prove it beyond a reasonable doubt. It does not have to allege it in its indictment, but it does have to prove it beyond a reasonable doubt, a proposition with which every single recorded case is in agreement. Well, that may well be true, but they're not our cases, and they might be wrong, and I know that what I'm suggesting about what the language means is not supported by either you or by Mr. Fagan, but we are interpreting statutes and regulations, and maybe we ought to start with what they actually say. Purpose does come into this inquiry, but it's in the regulation for the purpose of doing certain things. Well- If you're going to find purpose someplace, that's where you have to find it. And as for good faith, I don't know where that word comes from at all. It's nowhere. Well, it's certainly not in the statute in those words. That's true. It is, however, a useful shorthand way of capturing what it means to do something knowingly and intentionally, which are familiar terms of art that have been read to entail a good faith defense. But Justice Alito, I think it's worth trying on for size what the world would look like under the interpretation that you're at least raising as a possibility. In that world, a doctor, his only defense would be that he didn't know he was prescribing a controlled substance. And I suggest that that would mean that the only doctors who could possibly be acquitted have prescribed the medicine in a coma. No, that wouldn't. It wouldn't follow because the prescription would have to be an invalid prescription under the regulation, and it would be invalid if it was not written for a legitimate medical purpose. He has to have that purpose. Anyway, I've taken up a lot of your time. I just wanted to go through the language of these provisions, because to me, at least, it's important as a starting point. With which, of course, I completely concur. Justice Alito. Justice Sotomayor. Justice King. Justice Gorsuch. Counsel, I want to see if I understand it, so tell me if I make any mistakes here. But we have a dispute over how far knowingly and intentionally distribute. Put that aside. Assume Justice Alito's grammar teacher was right. I know you don't want to, but let's just assume that. As I understand it, your position would still be that the accept clause has to have some mens rea element to it, because it's what distinguishes lawful from unlawful conduct. That is, a doctor would be otherwise prohibited, in all instances without any mens rea, from prescribing medicines. Correct. And so under Staples, excitement video, as far back as Morissette, we would imply a mens rea. You with me so far? Absolutely. Okay. And then the next step is what do we do about, and you use good faith as a shorthand for that argument. Precisely. Okay. And then 885, in your view as I understand it, provides that the government doesn't have to negative all the possible exceptions that would allow someone to hold prescription drugs. So for example, there are veterinarians, there are pharmacists, there are family members who can hold drugs for loved ones under the exceptions provided for in the statute. The government doesn't have to plead and prove that all of those exceptions don't apply in the case at hand. I agree with that. Okay. But what it does provide is that you have to come forward, a burden of production, says the burden of going forward with evidence, which is often used as another shorthand for the burden of production. Correct. To invoke one of those exceptions. And that when you do, then the government has the burden of proving all the elements of the crime. And that one of those elements is mens rea. I agree with all of that. Okay. All right. Thank you. But if I may, if that's all correct- Be careful. I understand. But I just feel since I- Let us help, Counselor. Since I have an individual client, I feel I ought to add that if all of those propositions are true, Justice Gorsuch, we get a new trial. Fair enough. Justice Kavanaugh? Justice Barrett? I do have one question. So Counselor, am I right that no circuit has adopted the test that you're proposing, this good faith shorthand? As I understand it, there's a spot in your brief where you say that the Seventh, First, and maybe Fourth Circuits, if I remember the circuits correctly, have adopted a subjective test that you say is substantially similar, but they don't say good faith. They use the intentionally formulation. So what is the difference? And if we agree with you, why would we say good faith rather than just sticking closer to the language? Well, good faith is regularly used in the circuits. I certainly agree with Justice Alito that it isn't in so many words in the statute. It is captured in the First, Seventh, and Ninth Circuit standard that the- But they don't say good faith. Am I right? Well, they actually- they do use the words good faith if you read some of the cases, but they also say that what the jury must be told is that the government must prove, beyond a reasonable doubt, that the doctor knowingly and intentionally lacked a good faith medical purpose and knowingly- A legitimate medical purpose. Yes. So you're putting good faith into the formulation. Yes, but that's simply a shorthand for knowingly and intentionally departing- So there's no significance in your mind from departing from that knowingly and intentionally legitimate medical purpose language and your good faith formulation. Correct. So why do you use that instead? Because courts seem to do it all the time and- But not the First, Seventh, and Ninth. Well, I think if- Your Honor, respectfully, if you read their cases, you'll find good faith used into- But not in the instruction. I mean, you did say in your brief that they don't use that formulation in so many words that they use the subjective intent formulation and you described it as substantially similar. Correct. So I'm taking you at your word and that description in your brief and I'm asking you substantially similar. Is there any respect in which it's different and what would be the downside? If we agree with you, what would be the downside of just using the formulation these other circuits have? There would be no downside and they were interchangeable and we would be delighted if that were the result of this decision. Okay. Thank you. Thank you, Counsel. I'm sorry. Justice Breyer- I'm sorry, Mr. Robbins. Justice Breyer had a question. It's just that I had a different English teacher. I had a different English teacher, Ms. Chichester, who told us an adverb could modify a verb, an adjective, or another adverb. As long as that's so, the teacher says to the class, class, I don't want you to refer to Basingstoke's book about Julius Caesar unless we're talking about the Gallic Wars or something. Purposely. I don't want you purposely to do that. I don't want you purposely or knowingly to talk about Basingstoke's book about the Gallic Wars unless we're talking about the Gallic Wars. I guess that knowingly applies, doesn't it, to the unless clause? I do think so. Yeah. And if you put the unless clause first, it applies too, doesn't it? No doubt. All right. I'm really not asking you this question. I'm asking Mr. Fagan. And let me just say, lest I leave the point unsaid. You would have been good in Ms. Chichester's class. Yes. You know, if push really came to shove, I would recur to the point that this court made in excitement video, and I believe in Rahafe as well, that even when it's not the most grammatically satisfying solution, the presumption that scienter extends to any element that separates wrongful from innocent conduct still obtains. With that, I thank the court. Thank you, counsel. Mr. Brindley? Thank you, Mr. Chief Justice, and may it please the court. In Gonzales v. Oregon, this court found that as applied to doctors, the purpose of the CSA was only to prohibit the use of prescriptions to engage in drug trafficking as conventionally understood. If it is sufficient to find only that a doctor acted outside the usual course of practice without reference to the purpose of the prescription, then doctors can be convicted for failing to follow medical norms even if they never prescribed for an illegitimate reason. This allows conviction of doctors who misapprehend the extent of their obligations but are not drug dealing as conventionally understood. There are myriad mechanisms for protecting patients from doctors who violate the standard of care in various ways. That is not the function of Section 841. The question under 841 is not whether a doctor was a bad doctor, but whether he was a drug dealer. Thus, under 841, any good faith definition must be based solely on the sincerity of the doctor's purpose in writing the prescription. And with that, I welcome the question to the court. Counsel, you refer to the good faith definition, and I understand your friend on the other side has a idiosyncratic view of what the law ought to be. And I guess I don't know, well, did you agree with that? Is that what you're really asking for, his own personal definition of what the normal medical course of practice, whatever it is? No, absolutely not, Chief Justice Roberts. I am not. What we are asking for is that the question of whether, what the usual course of professional practice is, that is an objective question that will be answered by the presentation of evidence and facts regarding what the standards are. And then the question of what the doctor's intent was is the next question. Did the doctor intend to write the prescription without a legitimate medical purpose? But whether or not the prescription served a legitimate medical purpose is an objective question. So we are not suggesting that somehow he can create for himself the definition of medical practice. Objective evidence will decide the definition of medical practice. Is there objective evidence out there, like in terms of pain management prescriptions, they should be this, you know, whatever, this much a month, or you should be sure not to go over this or whatever? There are guideposts that are provided by various state medical boards that would come into evidence. There is expert testimony that is always admitted in all of these cases, in mine and Dr. Ruwan's case both. And that expert testimony talks about what the standards are and the deviation from those standards that is observed and allows the jury to decide. So he presumably is charged with knowledge of that, right? Just as he's charged with knowledge in my earlier discussion that the speed limit is 70 or not, because ignorance of the law is no excuse. And those objective standards presumably set some standard of law and for what constitute usual course or whatever. I don't agree that that's a question of law. Those are questions of fact. If there is perhaps some... Well, now you're talking about him saying, I think the speed limit ought to be 70. In other words, if there's some whatever you look to, publication or whatever that says the number for prescriptions per month or whatever is 200, you shouldn't go over 200. Your client would not be entitled to an instruction that, well, if you think it ought to be 400, then you're operating in good faith. And we're not suggesting that he would get an instruction that says that. What we're suggesting is the doctor must be required to... The government must be required to prove that he didn't have a legitimate purpose for the prescription that he wrote. That's what is decisive here. With respect to a regulation like speeding, I just don't think that's the same category of situation as when we're talking about 20 and life sentences potentially in which there needs to be a principle of C interapplied. And here, to follow up on the Chief Justice's question, the legal question is folded into the elements of the offense except as authorized, right? So that, like in rehafe, like in the parota, folds what otherwise might in the abstract be thought of as a legal question into the offense. At least that's how I understood your argument. And that's exactly right. We think this is the precise same situation as that which existed in rehafe, where there may be a corollary legal question, but it becomes part of the... And the way this plays out, tell me if I'm wrong, is there's objective... There's evidence about what the objective standards are for medical practice, and those will come in, and then there'll be a determination of that. And the doctor may have violated that objective standard, but might have legitimately thought that the standard was somewhat different, and therefore, in those circumstances, should not be sent away for 20 years to prison, right? That's absolutely right. And your further thought is, if the doctor comes in with some outlandish theory about what he or she subjectively believed, the jury will almost certainly disbelieve the doctor's testimony that, oh, I actually thought there was some kind of outlandish idea that was a legitimate medical purpose. Yes, absolutely. That's absolutely correct. But what if the jury doesn't disbelieve it? What if the doctor really, sincerely thinks that a practice that is objectively outlandish is an authorized, is the legitimate practice of medicine? Absolutely sincere about it. Well... In your view, that doctor must be acquitted, right? Yes, because that doctor is not drug trafficking as conventionally understood. Section 841 is not meant to police whether he's following norms or whether he has a crazy idea. It's meant to police drug-tacking, it's... But what if the doctor legitimately believes that legitimate medical practice encompasses giving people who are dependent on drugs the drugs they need to satisfy that dependency? That's what the doctor really thinks, deep down, put the person under truth serum, and that's what the doctor thinks. The doctor has to be acquitted, in your view. If the jury believes that he's sincere and then his belief that that's a legitimate purpose, I think that is true. But I don't think that's very likely to occur when all the objective evidence comes in saying that's wrong. No, it's not likely, but that's what your interpretation means. Why would that be the case, counsel, if the evidence is that legitimate medical practice does not include the kind of behavior of your client in this case? Let's just suppose, all right, and that the jury could infer that your client knew that he would be guilty, even if he had some idiosyncratic views about what medical practice should look like, right? I would agree with that, yes. I certainly would agree with that. I think the risk... I'm sorry. Go ahead. I was going to say, I think the risk here is twofold. On the one hand, worrying about these extreme examples that are not going to come to fruition  from the result of having what turns out to be medical norms policed. And I think that raises the real risk that the DEA becomes a de facto national medical board that's never been authorized. On the hypotheticals, to pick up on the Chief Justice's hypotheticals, the speeding example, suppose there were a statute that regulated speeding that, like this statute, folded the legal requirements into the offense, okay? If you come in and you're going 35 in a 25 zone, you say, oh, I thought it was 35 here. Maybe a jury will believe that you really did think it was 35, not 25. But if you're driving, you know, 100 in a 25 zone, and you come in, oh, I thought it was actually 100 was the speed limit, you know, no one's going to believe that. Isn't that the way to separate out the outlandish example? Absolutely, yes. That's precisely what I'm saying, yes. Yeah, but that's, you don't get to say you have a good faith belief that it was 35, right? I mean, I'm putting aside the regulatory, you know, aspect, which I fully appreciate, but normally you don't get to think that. No matter how sincere you are, you still get the ticket. Depending on how the statute is written, but if the thing that separates wrongful conduct within the statute and within the elements of the offense involves a corollary question of law or collateral question of law, then yes, you get a good faith defense with respect to that. If you don't know that or sincerely don't believe it, then you're not guilty. But all of the objective evidence comes in, and if it says that your position is crazy, you're going to get convicted. That's the reality. But I think the Chief Justice, so would this be a closer analog to your example to pick up on the Chief Justice's hypothetical, except as authorized by law, you must drive under 55 miles per hour, and you say, well, I thought I was driving in a way that was authorized by law at 100 miles an hour because I was trying to get my child to the emergency room. And it turns out that you're wrong, that that's not an authorized, you know, exceeding of the speed limit. Is that what you're trying to get at? That presence of the except as authorized by law is what distinguishes the Chief Justice's hypotheticals from your position? I think somewhat that's true to some extent. What I would say is that the thing that differentiates the Chief Justice's hypothetical from our position is in this situation, we have a situation where the very thing that makes the doctors the only thing that makes the doctors writing the prescription improper or criminal is if he writes it with no legitimate purpose, not believing he's curing a malady of any kind. And so with respect to that, if he's sincerely wrong about that, he lacks a culpable state of mind, and he should not be convicted. In Justice Barrett's hypothetical, if the statute says except as authorized, and you know, you should be acquitted. Right? Yes. If you can convince people, it's true. But you're going to have a hard time. Yeah, you might have a hard time if there's absolutely a child in the car, the child wasn't injured. Yes. Justice Thomas.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you, Mr. Chief Justice. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. Although petitioners are trying to disclaim it as much as they can, they really are asking this Court to transform their DEA registrations, which are premised on the idea that they're actually practicing medicine, into licenses to, at their own subjective views, violate the general rule that drug pushing is illegal. They want to be free of any obligation even to undertake any minimal effort to act like doctors when they prescribe dangerous, highly addictive, and in one case, lethal, dosages of drugs to trusting and vulnerable patients. That's not what this Court said in Moore, where I think everyone agrees the Court implicitly adopted the jury instructions in that case, which distilled the statutory and regulatory requirements here to come up with an honest effort standard. If a doctor is trying, in Moore's words, quote, to act as a physician, unquote, he can't be convicted under Section 841. But a doctor can't choose to be the kind of doctor who seeks a DEA registration because he wants to deal with the most dangerous drugs that we have with a recognized medical use, and then decide that notwithstanding the boundaries of that license, he can invoke it to shield all drug dealing that he's running in the guise of a doctor's office. There's been some suggestion today that applying a knowledge standard, you know, what's the difference? It's all oblique. You know, these are very oblique examples, and it's never going to matter in practice. And I'd like to, if I get a chance later, to explain exactly why this isn't just a matter of hypotheticals. I think there, I can give you three examples. We have more, but three examples of cases, and these are admittedly stylized a bit, but they're based in reality of why this really matters on the ground. Number one would just be the irrationally egotistical doctor. And these are the kinds of cases we have trouble even bringing, let alone convicting a doctor. It's a doctor who gets his license and his registration, and he says, all right, you know, I think at bottom, the Hippocratic Oath, I just want to treat patients. And he prescribes substances that any other doctor would say are crazy and lethal. And he says, at bottom, we're all doctors, and my subjective belief is, at the end of the day, if doctors see patients, they got to do right by those patients. And that's number one. Number two would be the absentee doctor. And one problem with their standards is it really rewards doctors for untethering themselves not only from the medical profession, but from their patients. It's the kind of doctor, and I think you'll see some resemblances to the doctors here, who doesn't follow up on the background of his patients, doesn't make sure they're taking the medications, doesn't even conduct physical exams, doesn't check the database to see who else is prescribing opioids, and trusts nurse practitioners who aren't DEA registrants, aren't allowed to do this, don't have medical licenses to do most of the prescribing. Counsel, it seems to me that in the last minute or so, it sort of confirms it. You're arguing evidence in a case that's about legal standards. You're saying this is outrageous, they're doing all this, it doesn't care, we're worried about doctors. But what is it in the statute that separates innocent conduct from unlawful conduct? Your Honor, I'm happy to argue the law, I just wanted to respond to the suggestion that this doesn't really matter in the real world. Very happy to argue the law. First of all, Your Honor, grammatically, I think as Justice Alito was pointing out, I'd like to address Ms. Chichester in a second, but you can't have the knowing or intentionally mens rea kind of leap backward. I think counsel has not found any... I can't remember my grammar teacher's name, but let's put that aside. Putting the grammar aside, Your Honor, even if there were any ambiguity about whether that particular mens rea applies, I think it's put to rest by Section 885A, which clearly suggests that, not just suggests, but states that Congress expected that this was not an offense element. And because it's not an offense element, it's not the type of thing to which this court has traditionally... So you think the government, it would be all right if the government did not have the burden of proof on any of the elements here? Your Honor, we do agree with petitioners that the ultimate burden of proof, once the burden of persuasion is satisfied, is on the government. But I think that 885... Once the burden of persuasion is satisfied? I'm sorry. Once the burden of production is satisfied, I misspoke. Thank you, Your Honor. Once the burden of production is satisfied, the burden of proof, the burden of persuasion is on the government. Mr. Fagan, just articulate what that is. I don't mean to cut off the chief, but I still don't know what you understand your ultimate burden to be. So, Your Honor, we place our burden exactly where Moore did, which is an honest effort which we interpret as some objectively minimal, reasonable effort to practice some recognizable form of medicine, which neither the doctor... I'm sorry, you said to the chief that after you've put forth an exemption, what's your ultimate burden? You mean, what do you have to prove? Our ultimate burden is to prove beyond a reasonable doubt that the defendant was not even attempting to recognizably practice medicine. And... Put that in... Give me a jury charge. Well, Your Honor, I think... I would point the court precisely to the jury charge that was given in Moore, which was largely reiterated in Mr. Khan's case, and I can read to you the jury instruction in Moore. I don't recall the specific page number off the top of my head, but we think that is an adequate instruction, plus the honest effort instruction the court notes in footnote 20. We're fine with the language being framed as good faith. We're fine with our having the burden to prove it. But what... Because this isn't an offense element, I think the mens rea presumption that this court typically applies is at least applicable here only in muted form. Why isn't it? Why isn't it an offense element? I mean, as I read the statute, it says it is an element, manufacture, distribute, or one of those three, a controlled substance, that's an element, and no authorization. That's the first element. So why isn't it an element? And of course, if it is an element, I use Ms. Chichester as a joke because I want to make a point, and I'll make the point without the joke in a second. Well, Your Honor, I think the grammar point has been well made. All right. If you want the grammar point too, I mean, the first thing is, why isn't it an element? The other reason it's not an offense element is I think it is clear as day that the government does not need to include it in an indictment. In an element, it would have to include it in an indictment. In the United States Code, where the burden of production for the element of nonexistence thereof is on the defendant, and once it's there, produced, the government has to prove beyond a reasonable doubt. Now, I mean, I don't know why you wouldn't call that an element, but maybe there's somebody somewhere who said it isn't an element. Where? Well, Your Honor, that is actually, something that works like that is traditionally recognized as a form of affirmative defense. It's an affirmative defense, and why isn't it? Once it's produced, all I want, you might, I'm not an expert, you might find 50 treatises who said, if it's something that the production has to be on the defendant, and it is produced, after that, it's not an element. Okay? Just cite me to that, and I will go read it with care. Your Honor, I don't think I'm going to be able to satisfy you. Okay. Then let's go to the grammar point. The grammar point is simply this. The grammar point, and I don't have to use my comical example, but it's terribly easy to think of a teacher in front of a class who says to the class something like, I don't want anyone deliberately or purposely to refer to, make up an example, to refer to Basingstoke's book about Italy, unless we're talking about the Punic Wars. Okay? Now, the kid thinks they're talking about the Punic Wars. All right? Hasn't violated the rule, I would think. Now, just move the unless clause to the first part of the sentence, and I don't think, I can't imagine it making any difference. So I don't really see the difference between the except clause being at the beginning of the sentence or at the end of the sentence. There, I can't see it at all. But I can see your argument about it not being an element, because there I am certainly not an expert. And if there's some authority for that, I would be more than delighted to read it and think about it. Well, Your Honor, I would encourage you to look at, for example, self-defense statutes in the states which have been interpreted to work this way and are categorized as affirmative defenses. This is how Indian status is determined under Section 1152. It's the burden of production on the defendant, and then the ultimate burden of proof on the government. I think it can't be an offense element, because it's not included in the indictment. And I don't, I think the way this shakes out with the history, and as this Court recognized in Moore, in Part 3 of Moore, which speaks purely in objective terms, including in citing the honest effort standard and using it in reviewing the sufficiency of the evidence. Why don't we look at Moore's set, though? It does, I mean, that's the classic case and one of the most important cases in this area, the most important in this area. And the defendant there is deer hunting in abandoned property in rural Michigan, comes across these shell casings, and he takes the shell casings, and he was not authorized to do that, right? Not authorized to do that, as Justice Jackson says. But he thought he was authorized to do that, because he thought they were abandoned, right? Isn't that very analogous to this situation? Not a legitimate medical purpose, as objectively proved, but he thought there was a legitimate medical purpose. In Moore's set, not authorized to take the shell casings, because they weren't abandoned, but Justice Jackson, at great length and in eloquent terms, says that's critical to separate someone who's truly innocent and not deserving of criminal punishment from someone who is, namely to require the government to prove that he knew that he was not authorized to take those shell casings. Why isn't that just right on here? Well, let me make two points in response to that, Justice Kavanaugh. One is statutory, and the other is about the mens rea presumption. First, on the statutory one, I think if you were going to select a mens rea for this, I think the last one you might pick would be knowingly or intentionally, because that's the one that we know from the grammar Congress didn't apply. But, and the statute is structured differently from the statute in Moore's set. But as a question of the mens rea presumption, if the court were inclined to think that the mens rea presumption applies, I think all the background, first of all, 885A, and second of all, all the background of the Harrison Act cases, which I think Mr. Robbins acknowledged, we didn't have to prove knowledge, as well as this court's decision in Moore, which says if anything, the CSA was meant to strengthen the Harrison Act cases, plus the court's discussion in Moore about freedom for experimentation, which the government addressed in its reply brief at page 13 by pointing to the honest effort standard. I think this all shakes out in a different place than it might with some other statutes. I think this is the rare type of statute where, given the grave harm that can be done to these patients, given the public, I think as Moore recognizes, Congress drew the line at a place where it's not too much to ask a trained professional who voluntarily wanted to... But why not have... Sorry to interrupt, but the problem here, the core, as I see it, is the statute says and then regs say legitimate medical purpose. That's very vague language, in my estimation, and reasonable people can disagree. Write more specific regs if you have the problem that you're talking about, but legitimate medical purpose is a very vague thing on which reasonable people can disagree. Now, you're positing hypotheticals who are unreasonable doctors, and I think juries won't believe them in those circumstances sometimes, but write a more specific reg would be one answer. Well, I think it's more difficult than you're supposing in the reality of what's happening. I'm certain it is. I acknowledge that. I acknowledge that, but legitimate medical purpose, don't you agree that's a somewhat vague term? No, I don't, Your Honor. First of all, as Justice Scalia pointed out in dissent in Gonzalez against Oregon, but the majority didn't disagree with him on it. It's an objective standard, and if I may be permitted to borrow a phrase from then Judge Gorsuch's decision in Laverne, it can be proved the old-fashioned way. Be careful. I hope that was careful enough for Justice. As I gave your colleague, I'd like to see if we can find some common ground on just the operation of the statute, putting aside the mens rea question for a moment. I understand that's the heart of the case, but just the statutory structure is kind of difficult to parse, and I want to make sure I understand it. We agree that the government bears the burden of proof on all the elements required for conviction. Yes, Your Honor. Okay. I would hope we could charge there. That's traditionally true, yes. Okay. And the accept clause is an element because it's what separates lawful from unlawful conduct, right? I think there we part ways, Your Honor. Do we? Because I would have thought that, you know, it's not that the physician is prescribing medicine. It's that he's doing it, the question is whether he's doing it within the course of his registration or not. So the government has to prove that he's not doing it within the course of his registration. What that encompasses put aside, but it has to prove that, right? Well, yes, Your Honor. At the end of the day, although 885A, I think, makes it a form of affirmative defense. I'm going to get to that in a second. But you agree that the accept clause is, I mean, that's part of the government's burden of proof is to show that the physician did not act within the course of his registration at the end of the day. So I think what I was, just to be clear, I think what I was taking issue with in your first formulation was calling it an element. I agree that once the defendant puts his DEA registration at issue, the ultimate burden of proof is on the government. I agree with that. Yes. And normally the government has an obligation to negative all exceptions when it pleads and proves its case. That's normally the case. I don't know that that's true, actually, Your Honor. How about often? I think it is sometimes true. Sometimes. Okay. Sometimes. That's good enough. And in 885, Congress recognized there are a whole lot of exceptions in this statute, right? For not just doctors, but for pharmacists, for veterinarians, for owners of pets, for family members. And so it recognized that to plead and prove all of that for the government would be very difficult in 885. Do you agree on that? Yes. Okay. And so the burden of production, therefore, is incumbent upon those asserting one of the And that's a burden of production. Do we agree on that? Yes. Okay. And then once the, and I think this is where you're trying to leap forward to, once the doctor comes forward with evidence suggesting that he is within the course of the exception, his actions are within the course of the exception, the government still bears the final burden of proving that he was not. Yes. Okay. And so the only question really is whether that except element bears a mens rea or not. And that's really the nub of the issue before us. Again, your honor, I wouldn't call it an element, but I don't dispute your formulation. And I think where, as I was discussing with justice Kavanaugh, I think where the mens rea element shakes out, and I think there are two places you could get it, is at the honest effort standard, which we, the courts have interpreted as an objective standard. And we think rightly so, that this court set up and more. One is the mens rea presumption, as I was just saying, I do think this is the type of case, particularly because it is pitched as an affirmative defense, and we're dealing with trained professionals who voluntarily choose to work with dangerous substances with vulnerable patients, that the idea of some objective manifestation of at least an attempt to practice some recognizable form of medicine is where the standard should land if you want to go with the mens rea presumption. But where I actually think more got it, and I think this actually may go, Justice Thomas, to some of the questions you were asking Mr. Robbins at the beginning of his argument, is the legitimate medical purpose standard that is in both the statute and the regulations, which I think otherwise did not have much play in the court's opinion in more, and the court essentially translated in that context into an honest effort standard, and as I was just saying, legitimate medical purpose is an objective standard. There are legitimate and illegitimate medical purposes, and the doctor has to at least be doing something that other doctors would recognize as an attempt to be practicing as a doctor before he can wave around his DEA registration as a shield. Mr. Fagan, can I just follow up on that? So all of this really comes from, I mean, I have many of the same questions as Justice Thomas, because none of this obviously is in the statutory language, and the authorization clause is pretty circular. So it is, it all comes down to the regulation and more, am I correct? Well, I wouldn't say it all comes down to the regulation and more just because perhaps this is more circularity, and I apologize, Your Honor, but more itself says that the regulation and its text are grounded in the statute. But in different provisions, not in the provision that these petitioners are both accused of violating. That's right, but I mean, this may address Justice Kavanaugh's question too. I'm not entirely certain that the government would be free to adopt a substantially different regulation than the one it has adopted, given both the statutory language that's already in the CSA plus this Court's interpretation in Gonzales v. Oregon. Like it's now pollucively clear the government can't, I mean, it can, but the primary thrust of the, it can regulate medicine, but the primary thrust of the CSA is for state regulation of medicine, and that's why the standard is worded the way that it is here. And I think that standard, which was the same standard in more, you had the same statutes in more, shakes out the way that more did, where we're, what we're looking at is, is this person actually acting as a doctor? And I think it's fair to say that, and this gets to your more set point, Justice Kavanaugh, I think it is not innocent conduct to wave around the DEA registration after the fact for conduct that wasn't relying on it to begin with. I apologize. I'm sorry. That's exactly what Justice Jackson said about more set himself in the last paragraph of the opinion, but talked about that would be a jury question. But I want to go back to something you said earlier, because I think it gets at the heart of this. You said a legitimate medical purpose is an objective standard, correct? Isn't there going to be expert testimony that comes in, in many cases, about whether something was legitimate medical practice? Yes. And you can see that in the record of these cases. Okay. And so you'll have people coming in on both sides, and the jury will have to decide what was legitimate and what was not, right? Yes. And, Your Honor, I don't want to just be talking about the... Let me finish my question on that. And there could be close calls, right? Close calls as to what the evidence shows objectively was legitimate? Yes, Your Honor, but if I may be permitted to... Okay. And so if you're on the wrong side of the close call as the doctor who was acting before you get to the trial, if you're on the wrong side of the close call about what you believed, you go to prison for 20 years. Well, Your Honor, I don't really think that's going to be the case for doctors who make innocent mistakes, because if the jury is instructed properly, and we do think the jury instructions here were proper, and at a bare minimum, counsel was able to argue without objection that this is not just a negligence standard, that a jury has to really believe that the doctor wasn't even trying to act as a doctor. And it's, I think, going to be informed by the expert's testimony as to the other piece of this, which is the usual course of medical practice. If you read the entire regulation, it's... I mean, just the first sentence of it, it's prescribing for a legitimate medical purpose by an individual practitioner acting in the course of his professional practice. And all the professional practice information that's going to come in is really going to inform that determination, because it's the case here, as in the case of pretty much all the people we prosecute under these provisions, that what they're doing is, as these patients did, excuse me, these doctors did, they aren't actually examining the patient. Mr. Fagan, again, just to... I think to answer Justice Kavanaugh's question is, unless there's a mens rea here, the answer is yes, that in those close cases, and I understand the government will never bring a close case, I understand that, but just assume hypothetically it does, and that the jury believes that it's not legitimate medical purpose under your regulations. Even though it's an extremely close case, that individual stands, under the government's view, unable to shield himself behind any mens rea requirement, and is subject to essentially a regulatory crime encompassing 20 years to maybe life in prison. Well, Your Honor, I think it's... I think the answer has to be yes, isn't it? Your Honor, I think the answer is going to be yes, but with a proviso that I'd just like to add, which is, we do not think, and this goes a little bit to what I was just saying, that a doctor can be convicted for something that other doctors would recognize as within the boundaries of medicine. Of course, it has to be, but it's an objective test, and once the jury decides it's outside the legitimate bounds of medical practice, acknowledging the standards of the profession, that individual goes to prison, straight to prison, do not pass go. No, Your Honor, that's where the honest effort standard... Oh, so there is a mens rea now. Yes, there's an honest effort standard here, so if the doctor was attempting to prescribe for a legitimate medical purpose... Why isn't that just knowing it unintentionally, then? Why isn't that? There either is or there isn't a mens rea here, counsel, and I'm really struggling to understand at this stage, at this late date, standing at the podium, where the government stands on that. Is there a mens rea that the government has to prove or not? The standard is legitimate medical purpose, and perhaps I misspoke in answering your question, Justice Kavanaugh. You can't be convicted so long as you took an honest effort to prescribe for a legitimate medical purpose, and there can be reasonable mistakes about what legitimate medical purposes are, but at the end of the day... An honest effort, see, I don't know what that means, but I do know what knowing and intentional mean. So... So are you saying that there has to be some form of mens rea here that the government has to prove? Yes or no? Yes, and it is the... Why isn't that the end of the case? We... It is because we think the appropriate mens rea is the one that the court applied in Moore, which is an objective, honest effort standard under which the defendant has to show... Objective, honest efforts is like a contradiction in terms, Mr. Fagan. I don't think so, Your Honor. For example, if a partner were to ask... But you say there is a mens rea. You agree with that? I think the court had one in Moore. It was the honest effort mens rea. I... Where does that come from? Mr. Fagan. Where does that come from? Because in Moore, it's almost like the court just announced it, and we've gone back and forth about how knowingly and intentionally, Mr. Chester aside, don't necessarily grammatically modify the except clause in the statute. So to Justice Gorsuch's question, where does the intent element come from? It's just Moore. I asked before, is this all just Moore in the regulation? Is it just Moore? Because Moore said it. I don't think Moore brought it out as such. I think Moore could have been getting it from one of two places. One is some muted form of the mens rea presumption that's adapted for these circumstances where what you have is an affirmative defense. And the other is from the legitimate medical purpose regulatory standard, which is itself drawn from the statute. Right. But courts have understood the term honest effort as an objective standard, as I think they should. If a partner asks an associate to try to find case law to support a proposition and give me an honest effort to do that, and I don't think the partner expects the associate to respond, I'm not going to run any search at all because I'm 100% certain that it's not going to turn anything up. Mr. Fraga, let me suggest a way of finding a mens rea in this combination of statutory provisions and a regulation. And it can be found in the regulation. It can be read into the regulation, which does say it must be done for a purpose. So you can read in some sort of mens rea there. I think you might read in the mens rea of recklessness. So that a doctor who knows what a legitimate medical purpose is, or is reckless as to ascertaining what a medical purpose is, would fall within the prohibition. I understand that there are serious practical problems and questions of fairness that arise if this is read as having no mens rea whatsoever. But what disturbs me about some of the arguments, or many things disturb me about some of the arguments, one is the ungrammatical reading of the statute itself. The second is the idea that the accept clause is an element. If it's an element, it has to be pled in the indictment, as far as I'm aware. And therefore, the indictments, I haven't looked at the indictments in this case, but they would be invalid if they don't allege that. So these petitioners would not only be entitled potentially to a new trial, they'd be entitled to have the indictments dismissed, and all the other indictments that have been provided here have been flawed. And then you have the problem of 885. The accept clause is an exception. It's like a justification under the common law. It doesn't have to be pled in the indictment, and it's not one of the things that necessarily has to be proven beyond a reasonable doubt. It's more in the nature of an affirmative defense. And as to an affirmative defense, the burden of production and the burden of persuasion can be allocated differently. What I really don't understand about your argument is what you say about 885. I'm baffled by your reading that says that this allocates the burden of production to the defense, but not the burden of persuasion, when it says that as to any exemption, including this exemption, the government is not required to negative it at trial. How do you get around that? Well, it says, Your Honor, that the burden of going forward is... Does allocate the burden of going forward to the defendant, yeah. We interpret that in light of Moore and in light of where every court of appeals is on this to place the ultimate burden of proof on us, but under what ultimately shakes out into a mens rea standard that has an objective component. The objective component is incredibly doctor protective. All it requires is some attempt to recognizably practice medicine, which wasn't present in Moore and isn't present in these cases. And a doctor who's seeing and examining patients or doing all the types of things that the doctor in Moore didn't do and that these petitioners didn't do really doesn't have anything to fear under this statute. Thank you, counsel. Just one more question from me. An opinion from the 11th circuit, it's quoted in page 16 in Mr. Robbins' brief, says that a physician's good faith belief that he dispensed a controlled substance in the usual course of his professional practice is irrelevant. Do you agree with that statement? Your Honor, I think that can inform whether an honest effort was undertaken, but at the end of the day, I think the court is correct to the 11th circuit, that is, is correct to the extent that what the 11th circuit is saying is that if the defendant wasn't even attempting to practice medicine. No, they're not saying that. What they're saying is that a good faith belief that he dispensed a controlled substance in the usual course of his professional practice is irrelevant. True or no? I think to the extent, I interpret that statement to mean that the defendant's own subjective views can't override everything else and result in- But you can't interpret it that way. It says a good faith belief. So that goes against- It does say belief, Your Honor, and we think the belief could have been arrived at that place in a good faith way. There could be a doctor who just beneficially believes that handing out prescriptions on a street corner for cash is a legitimate medical purpose because lots of people are in pain, but I think we'd all recognize that person as a drug dealer. Well, it sounds to me like we're getting back to some of the questions earlier that you would want to put on evidence to say, well, whatever he says, that's not good faith. Well, Your Honor, I don't think we are- I think the way that good faith was used in Moore and as has been pointed out here today, it's not a standard that appears anywhere in the statute of the regulations. The way good faith was used in Moore was explicated by the honest effort standard, which I think sets forth an objective standard as several courts of appeals have recognized, and it was used more in the sense of like the good faith exception to the exclusionary rule or something to that effect, where it's really something that's objective and reasonable and that what the statute is asking doctors to do when it applies to doctors at the end of the day is if you're going to rely on your license, be at least minimally careful when you do that. Thank you. Justice Thomas, anything further? Mr. Fagan, I sympathize with the position you're in. Thank you. Normally, when there is a registration and there's noncompliance with the conditions for that registration, you lose your registration like a car or your right to drive, that sort of thing. This case, you have the DEA registration, but it's self-policed. You can retain it under certain conditions, that is, that you comply with the standards of the medical profession, of prescribing drugs, et cetera. And then it comes up as to whether this compliance is sufficient when you are indicted for the underlying 841 crime. Can you think of another instance in which the conditions of a registration like this then become a part of a criminal offense because you fail to comply with those conditions? Well, Your Honor, I'm not thinking of one right off the top of my head. One imperfect analogy is, for example, the standardized conditions of supervised release, which are not necessarily codified. They may be in the guidelines, but you can be subject to additional penalties for them, although those penalties relate back to the original crime. I'm thinking more of an authorization. This is sort of an odd arrangement where you have conduct that is illegal, that is, distributing certain drugs except if you are registered and the registration isn't withdrawn, thus meaning that a subsequent distribution without that registration is illegal. Rather, your noncompliance with the conditions of that registration becomes the basis or part of the basis for the underlying crime, for the crime of distribution. It's the authorization. You don't have to... Well, Your Honor, I guess I'm not quite sure whether this answers your question, but the terms of the statute explicitly require the doctor to comply with his registration, and it is understood that the registration is issued only for a limited purpose. I think the right way to think about this is that our laws have a general prohibition against the distribution of these dangerous substances. Physicians have a special exemption that they're granted, but their special exemption ends when they start violating the terms of the license the government has given them to do something. One analogy might be, Your Honor, I don't know whether it's a perfect analogy again, but there may be certain things we allow police officers to do, like exceed the speed limit, Mr. Chief Justice, that we don't allow them to do in, for example, the course of their daily life. And I think by the same token here, there may be some government authorization to do something that, frankly, I don't think anyone in this room, unless there's some doctor here, could do. We allow doctors to do it because they're trained professionals, but when they exceed the scope of their registration and their special ability to do it, they become the same as ordinary people violating the criminal laws. My only point is, and I won't belabor it, is that if a doctor in the state of Virginia, for example, does not comply with his or her license, then you lose your license to practice medicine, so it's regulatory. Here, there isn't that intermediate step, that is, that you lose your registration that allows you to prescribe certain drugs. Instead, it's folded into the underlying criminal violation. That's all I'm saying. And I just, my concern was that we seem to be doing things, two things at the same time with some quite significant criminal penalties. Sorry, I'm sorry, Justice Thomas, I was misunderstanding the question. That's the way it works under federal law, too, is that also there's a set of civil revocation proceedings that can and would occur, and, for example, Dr. Kahn's license was revoked, his, sorry, I mean, sorry, his DA registration, as well as, I think, his state license. That is a separate proceeding, but we're, I don't think it makes any sense and the statutes don't require that the revocation of the license, the registration as a civil action, precede the prosecution, because if it did, then you'd get basically one free shot. You could start dealing drugs on a street corner, you'd get your license revoked, and then if you only, if you did it again, would you be violating the criminal laws. I don't think that's how it works. Thank you. Justice Breyer. Mr. Brewer. Hi, Mr. Counselor. Moore v. U.S., which you're relying a lot on, in a footnote, did set forth the trial judge's instruction. Have you read that, and is that an instruction that you're comfortable with? Yes, Your Honor. It talks about how a sincere intention to treat the patient in front of, this is on page 124 of the appendix in Moore. 142, note 20. I have it in front of me, so. I'm sorry, Your Honor. I thought it was page 124, but I apologize. A sincere intention to treat the patients in front of the doctor would be not enough. The doctor has to be sincere in attempting, and I think it's the attempting language that we'd primarily be relying on here. So, my question is basically, you think this is a correct statement of law? And you could be right, it could be a typo in the memo I was given, so it could be 124 instead of 142, but the point is, are you happy with that instruction? You're setting forth what you believe is the accurate instruction. Yes, except I think what's more important than the precise terms of the jury instruction in Moore is how the court understood it in Moore. And to the extent this court might now read it as a non-objective standard, I really don't think that's how the court was reading it in Moore, because there's really not any suggestion of that. It's cited, and then the evidence is all objective. All right, counsel, I don't want to eat up a lot of time, so let me go to my second part of my question. Could you tell me whether a situation could exist that a prescription was not issued for a legitimate medical purpose, but still is in the usual course of professional practice? I don't think that could be, right? I think it is much easier to think of a converse situation, but let me give this one try, Your Honor, which is you might have a doctor who has a patient. I think the reason for allowing a conviction to rest on either of them is because it clarifies a situation like the following. A doctor has a patient in front of him who is legitimately in pain, legitimately does need some opioids, but there are strong indications, for example, through bodily fluid tests and so forth, that although she's been receiving the pain medications, she's not actually taking them and she's probably just giving them to somebody else and is going to sell them. You might think that that is for a legitimate, you're still prescribing the drugs for a legitimate medical purpose because the doctor is really hoping this time the patient takes the meds herself because she needs them, but it's outside the usual course of medical practice because all the indicators of diversion show that the doctor really should not be prescribing these drugs to that patient. Well, I'm not sure how that's not the same thing, meaning why would prescribing it ever be considered medically legitimate if in the objective, ordinary standard of business it's not considered appropriate? Well, I think, Your Honor, it clarifies to the jury that what the jury needs to look for, like it's simply not enough for the jury to think that there's a legitimate medical purpose. As we say in our brief, I doubt there are very many cases in which a jury, I dare to say there are probably none, in which a jury thinks that there was a prescription that a doctor issued within the usual course of his practice that was not also issued for a legitimate medical purpose. I was positing one scenario where perhaps a jury might think that, but I think in reality the real reason for splitting them out in the way that we think the jury instructions here properly did is because of the converse situation where a doctor just meets someone on the street who says, I have pain, writes out a script and hands it to him without even examining him or doing any of the other things you'd think a doctor would other than signing an illegible signature on the bottom of a prescription. All right. That goes to your good faith, then. That's what Moore was talking about. Well, Your Honor, I think the legitimate medical purpose also does play a role in generating, as I was suggesting to Justice Barrett, the good faith standard because I think it informs the entire regulation. I mean, the regulation reads as one unitary piece, but what these jury instructions do is they clarify for the jury not just to focus on the idea that the doctor, as all the doctor defendants do in these cases, just says, look, I had a patient who was in front of me who was in pain. I prescribed. Not that that's not enough, but the doctor has to be really doing things the way a doctor would and have it ultimately shake out to be the kind of prescription that we'd expect a doctor to write. The defendant has to at least be attempting to do that. Thank you. Justice Kagan? Justice Kavanaugh? Justice Barrett? Just one, hopefully, quick question, Mr. Fagan. So just so that I understand, I asked before, is all of this coming from the regulation and from Moore because it's not in the text of the statute? We've talked about the honest attempt standard. It does seem to me, and you said that to the extent that there is some sort of mens rea requirement wrapped up in this phrase, honest attempt, I think I understood you to say, Justice Gorsuch, that that is a sort of mens rea requirement. Did I understand that correctly? Yes. I think that is, and it's, Your Honor, I think it's roughly akin to a form of extreme, objectively grounded mens rea, and I say extreme as I mean incredibly defendant-friendly, not similar to civil law as we pointed out in our brief, defendant-friendly kind of criminal standard that you could see if you looked at Model Penal Code 202 and the commentary thereof, where really if you just have a defendant who's acting in a grossly unreasonable fashion, that that's sufficient, and it's a context-dependent inquiry as to whether that's the right mens rea that depends on the circumstances, and I think portions of Moore and this Court's defense reflect that this is such a situation, given the vulnerability of the patients and the general public and the fact that these doctors seek out these DA registrations, and they're licensed professionals, and we shouldn't have situations like we had after raiding Wren's Clinic, where the price of opioids on the streets doubles because suddenly the supply's been cut off. Okay. Can I just then just to wrap up. So that honest attempt requirement, which is some form of mens rea, exists by the government's grace because of the regulation, because nothing in the statutory text requires it. Well, a couple of points to that, Your Honor. As I've earlier suggested, and I think as Moore bears out, the regulatory language is grounded in the statutory language itself, so I'm uncertain whether the government would really be able to adopt a substantially different regulation to govern this particular context. And the other thing I would say is if this Court were to apply the mens rea presumption, it could also come from there, but ultimately we are landing in the same place that Moore did. We're taking this, we have been taking this Court's teachings from Moore as we have for the past, you know, 47 years and applying it to these cases. Thank you, Counsel. A rebuttal, Mr. Robbins? Thank you, Mr. Chief Justice. First off, with all respect to my friend, Mr. Fagan, the government is not giving you an accurate rendering of Moore. Footnote 20, the instruction to which Counsel was just adverting, is states an honest efforts instruction, which we say in our Section 1B of our opening brief is satisfactory to us, but it is not an objective standard. The government is trying to objectify, if you will, a standard that was plainly intended to be subjective. Why do I say that? Because in the very next paragraph of the opinion, the Court says that, well, the defendant said he was just trying a novel technique to solve a problem, but the jury didn't believe him. The jury didn't believe him. That says that this is a subjective question. Did he make an honest effort? He said he did because he was using some novel technique, but the jury rejected it. The jury didn't say, well, a reasonable doctor wouldn't do that. An objectively reasonable doctor wouldn't do that. No. They said, we don't believe you, which is exactly what juries are entitled to do when they assess the purpose or intent of a defendant. They do that in every case, which is why we suggest that the medical purpose test simplifies the jury's task and adheres to the text of the statute. But if this Court is to use an honest efforts test instead, a la footnote 20 of Moore, we should be clear that it is not an objective standard at all. The government's submission is, no matter how they disclaim it, a negligence standard gussied up as something else. But my suggestion to the Court is that a billion objectives here and a billion reasonableness is here before you know it, you're talking about real negligence. And that's, I think, where we find ourselves with the government's argument. The proposition that this is ungrammatical, I resist it. But even if it were ungrammatical, and I resist it because, in point of fact, Congress has placed this except as authorized downstream instead of upstream, and I don't think there's a dime's worth of difference between those two formulations, between 841A1 and 841H, which was enacted 20 plus years later to deal with internet sales. The Harrison Act cases manifestly support us and not the government. You need look no further than the unanimous opinion in Linder to see that what matters was intent, subjective intent of the doctor. And I want to close with just one point that goes back to the Chief Justice's question at the beginning of this argument. Chief Justice asked, is there a book that tells us what the right amount of medication is for a certain kind of disability? The answer is there is no such book, and that's the whole problem. The problem is that medical standards evolve, it's a constantly evolving matter, and that Thank you, counsel. The case is submitted.